UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
NEW HAMPSHIRE INS. CO.,        :
                               :    Civil Action No.
              Plaintiff,       :    1:07-CV-1131 (NLH)
                               :
         v.                    :    OPINION
                               :
WILLIAM DILLER, JR.,           :
                               :
              Defendant,       :
                               :
         v.                    :
                               :
JAY KOPP, NIA GROUP ASSOC.,    :
LLC, and MANN CUSTOM BOATS,    :
INC.                           :
              Third-Party      :
              Defendants.      :
_____
```

**APPEARANCES:**
MICHAEL E. STERN
JAMES E. MERCANTE
KEITH A. BRADY
RUBIN, FIORELLA & FRIEDMAN, LLP
292 MADISON AVENUE, 11TH FLOOR
NEW YORK, NY 10017
*Attorneys for New Hampshire Inc. Co.*

SEAN T. O'MEARA
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033
*Attorney for William Diller*

FREDERICK M. KLEIN
MICHAEL ROSS MANAREL
SULLIVAN & MANAREL LLP
744 BROAD STREET, 16TH FLOOR
NEWARK, NJ 07102
      and
ROBERT M. SULLIVAN (*Pro Hac Vice*)
SULLIVAN & MANAREL LLP
1350 BROADWAY, SUITE 1001
NEW YORK, NY 10018
*Attorneys for Jay Kopp and NIA Group Assoc., LLC*

LAWRENCE J. KAHN
MICHAEL CHARLES ELLIOTT
FREEHILL HOGAN & MAHAR, LLP
80 PINE STREET
NEW YORK, NY 10005
*Attorneys for Mann Custom Boats, Inc.*

**HILLMAN, District Judge**

Plaintiff, New Hampshire Insurance Company ("NHIC"), filed a complaint against its insured, defendant William Diller, Jr., requesting a declaratory judgment denying marine insurance coverage for damage to Diller's 60-foot vessel, "M/V Dream Catcher" (the "vessel").  Diller cross-claimed against NHIC and also filed a third-party complaint against his insurance broker, Jay Kopp, and Kopp's employer, NIA Group Associates, LLC ("NIA").  Diller also filed an amended third-party complaint against Mann Custom Boats, Inc. ("Mann"), the manufacturer of the vessel.

Before the Court is Kopp's and NIA's ("Kopp/NIA") motion for summary judgment or, alternatively, for partial summary judgment on the pleadings seeking to dismiss Diller's third-party claims against them.  For the reasons explained below, Kopp/NIA's motion is granted in part and denied in part.

## I.  JURISDICTION

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332.  There is complete diversity between the plaintiff in the underlying action who is a citizen of the Commonwealth of Pennsylvania where it is incorporated and of New York where it has its principal place of

business, and defendant/third-party plaintiff who is a citizen of New Jersey.[1]  Plaintiff alleges that the amount in controversy exceeds $75,000.00.

## II.  __BACKGROUND__

The following facts are not in dispute by the parties. Diller, who owned M/V Dream Catcher requested that NIA obtain a quote for marine insurance coverage for the vessel for the 2006-07 policy year.  Diller was a client of NIA, and Kopp, who was employed by NIA, had been Diller's insurance broker for approximately ten years.  To obtain a quote for Diller, Kopp filled out a request form on a website maintained by Maritime General Agency ("MGA"), the intermediary for NHIC.  Kopp stated in his affidavit that one of the fields on the MGA website requested information for the "number of claims in the last 5 years."  Kopp filled in this information for Diller stating that in December 2002, the vessel hit an object and that the amount

---

[1]  Under Fed.R.Civ.P. 14, it is not required that diversity of citizenship exist between the third-party defendant and the plaintiff, or that diversity of citizenship exist between defendant, as third-party plaintiff, and the third-party defendant.  See Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 169 (3d Cir. 1999) (stating that "... a third-party defendant joined under Federal Rule of Civil Procedure 14 does not become a defendant as against the original plaintiff, so that federal jurisdiction is not destroyed where those parties are citizens of the same state.")(citing Smith v. Philadelphia Transp. Co., 173 F.2d 721, 724 n. 2 (3d Cir. 1949)); In re Albert & Maguire Securities Co., Inc., 70 F.R.D. 361, 363 (E.D.Pa. 1976)(citing Frankel v. Alan Wood Steel Co., 201 F.Supp. 203 (E.D.Pa. 1962); 3 Moore's Federal Practice, § 14.25, § 14.26).

paid for that accident was $19,000.00.

After Kopp filled in the form on the MGA website, the information was electronically submitted to MGA.  MGA provided a quote and application for coverage from NHIC.  Kopp filled out the MGA application including information requesting "loss history."  Kopp states that he understood this request to be the same five year loss history as requested on the website form and filled in the same information.  Kopp also checked off the "licensed captain" box based on information from Diller that the vessel was being operated by a licensed captain.

The completed MGA application was then forwarded by Kopp to Diller with instructions for Diller to sign it and return it to Kopp with a check for the insurance premium due.  Diller states that after reviewing the application, he noticed that an incident that occurred in August 2004 was not reported on the application.[2]  Diller asked Kopp why it was not included and Kopp replied that it was not necessary to include that information because Diller paid those damages personally and no claim was submitted to the insurance carrier.  Diller signed the application which was forwarded to NHIC by Kopp.  NHIC issued a policy for the vessel for the period June 29, 2006 through June 29, 2007.

---

[2]  The August 2004 incident prompted the crew to radio "mayday" because the vessel reportedly began taking on water. The vessel was escorted back to port by the U.S. Coast Guard.

4

On August 9, 2006, while participating in a fishing contest in the Atlantic Ocean, the hull was damaged.  Diller submitted a claim to NHIC for coverage of this accident.  NHIC began an investigation of Diller's claim and on October 20, 2006, took his examination under oath ("EUO").

On March 8, 2007, NHIC sent a letter to Diller denying coverage on the grounds that Diller failed to disclose a "grounding" incident that occurred on February 2001 in which he submitted a claim to his previous insurance company for $115,000 for damages as well as $3,000 for a "mate's broken arm."[3]  NHIC also denied coverage for failure to disclose the August 2004 incident and for failure to disclose the full amount of the December 2002 accident.  Although the application stated the amount of loss for the December 2002 accident was $19,000.00, it was reported to his previous insurance company as a loss of $32,000.00.  Finally, NHIC denied coverage on the ground that the vessel was not seaworthy either at the inception of the policy or on the August 9, 2006 voyage.  NHIC denied coverage based on alleged misrepresentations made in Diller's written application and during his EUO.

NHIC filed a complaint requesting that this Court enter

---

[3]  An unresolved factual issue is whether NHIC required a complete loss history.  The third-party defendants claim that they were led to believe from the initial web-based form that only a five year history was required.

judgment declaring that no coverage is afforded for any claims arising out the August 9, 2006 incident; that the policy is void ab initio; that the policy is rescinded; and that NHIC is entitled to reimbursement of costs and expenses relating to the storage, survey, salvage and hauling of the vessel in connection with the August 9, 2006 incident.  Diller filed a counterclaim against NHIC for a declaratory judgment as to coverage of the vessel, and for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, bad faith and estoppel.  Diller also filed a third-party complaint against Kopp and NIA for negligence, breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty.[4]  On January 8, 2008, Diller filed an amended third-party complaint against Mann, the designer and manufacturer of the vessel.  Mann also made repairs to the vessel before the August 9, 2006 accident.

Kopp/NIA move this Court for summary judgment, or for partial judgment on the pleadings.  Since Diller does not oppose the dismissal of his claim for breach of the covenant of good faith and fair dealing (Count III) that claim is dismissed. Also, since Diller does not oppose the dismissal of his demand for punitive damages, that demand is dismissed.

---

[4]  Diller also included a claim based on respondeat superior which is a legal doctrine, not a cause of action.

6

III. **DISCUSSION**

Kopp/NIA move this Court to rule in their favor on summary judgment arguing that Diller's third-party complaint should be dismissed because his alleged misstatements made during his EUO constitutes an "adequate, independent basis" for NHIC to void the insurance policy, and because Diller reviewed and signed the written insurance application thus relieving Kopp/NIA of liability.

A.     **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has
met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  Id.  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those
offered by the moving party.  Anderson, 477 U.S. at 256-57.  A
party opposing summary judgment must do more than just rest upon
mere allegations, general denials, or vague statements.  Saldana
v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)

## B.  Diller's Examination Under Oath

Kopp/NIA argue that even if the written application filled
out by Kopp contained misstatements about the vessel's past
accident history, Diller's misstatements made during his EUO
constitute an "adequate, independent basis" for NHIC to void the
insurance policy.  In support of their argument, Kopp/NIA rely on
one case, Hartford Life and Accident Ins. Co. v. Nittolo, 955

8

F.Supp. 331 (D.N.J. 1997).  Even if we assume for purposes of Kopp/NIA's motion that the <u>Hartford</u> decision accurately sets forth the law applicable to Diller's third-party complaint,[5] the case is distinguishable in several important ways.

In <u>Hartford</u>, the plaintiff insurance company brought an action to rescind a disability policy because the defendant had made several misrepresentations on his insurance application and during an independent paramedical exam undertaken as part of the application process.  <u>Id.</u> at 333.  As in this case, the defendant in <u>Hartford</u> sought to shift blame to his insurance agent.  In his third-party complaint, the defendant sued his insurance agent, Mr. Garber, on the ground that any errors in the application were caused by Garber's negligence in failing to correctly record information, in failing to thoroughly ask all of the questions on the application, and in refusing to allow Nittolo an opportunity to review his answers before signing.  <u>Id.</u>

In granting both the insurer's and broker's motions for summary judgment, the court rejected the insured's arguments and found that Nittolo, the insured, had failed to disclose major medical problems, treatments and medications to the paramedical

_____

[5] We assume for example, and Diller does not appear to contest, that under New Jersey law if his own misconduct establishes an independent and adequate basis for the plaintiff to rescind the policy then his third-party complaint must fail. <u>See</u> <u>Perez v. Ohio Cas. Ins. Co.</u>, 2005 WL 2363828, at *3 (N.J. Super. A.D. Sept. 29, 2005)(insurance policy may be voided for willful misrepresentation of a material fact by the insured).

examiner during the application process and that Garber, the broker, had played no role in Nittolo's supplying of incorrect information to the paramedical examiner.  Id. at 336.  The court held that "... even if one were to assume for the sake of this argument that Garber was negligent in writing down some information, his negligence could not have caused this rescission because Nittolo's misstatements to the paramedical examiner without doubt formed an adequate, independent basis for this rescission."  Id.[6]

At this stage of the litigation, this case is distinguishable from Hartford.  First, in Hartford the record established that defendant provided false information to the insurance agent, repeated that false information during his examination, and that both of these events were part of the initial application process.  Here, Diller asserts that Kopp filled out the information for the initial application from his

_____

[6] The Court held Nittolo solely responsible for the false information and stated that "...[t]he ludicrous excuses for Mr. Nittolo's failures, as argued by his attorney, are worth mentioning only as further confirmation of the lack of a genuine factual dispute: he didn't realize he was taking a prescription medicine (despite his numerous trips to the pharmacy to fill his prescription for Valium); he didn't know his Valium was prescribed for stress and anxiety, but just thought it was to calm him down, even though he described his condition as "anxiety" in his own deposition; he had no idea his genital warts and herpes were sexually transmitted diseases; and-the best one of all-the paramedical examiner wasn't paying attention to his answers anyway because she was just flirting with him the whole time."  Id. (citations to the record omitted).

10

own files and when Diller asked why a specific incident was not included, Kopp replied that it was not necessary because no claim was paid.  This unresolved dispute over who might be responsible for any falsehoods or omissions in the initial application process renders this unripe for summary judgment disposition.

Secondly, and perhaps more importantly, the EUO took place here not as part of the application process, as in <u>Hartford</u>, but as part of the claims process.  Whether the insurer would consider the subsequent misrepresentations, which were made by Diller alone during the claims process, to be a separate and independent basis for recision is an unresolved issue in this case.   In contrast, in <u>Hartford</u> the issue of whether the insurer was entitled to recision for the insured's separate falsehoods was squarely before the court and resolved in the insurer's favor.   After finding that Nittolo had lied about his medical history and other things outside the presence of his broker and that such conduct represented an independent basis for recision the court did not have far to travel to conclude that the broker's misdeeds were no longer relevant.

Here, we have no similar motion for summary judgment from the insurer.  While we have their allegations, we do not know what evidence exists to support NHIC's claims for recision and their bases.   Until those issues are resolved, material issues of fact remain as to what legal effect, if any, any falsehoods

11

Diller uttered in the EUO have in this case.[7]

### C.   Diller's Review of and Signature on the Written Application

Kopp/NIA also argue that since Diller reviewed the written application and signed it, he is responsible for the contents of the application.[8]  Once again Kopp/NIA cite to <u>Hartford</u>, as well as to <u>Metropolitan Prop. & Cas. Ins. Co. v. Bell</u>, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) in support of their argument that since Diller reviewed and signed the application, he is solely responsible for the contents.  In <u>Metropolitan</u>, the Sixth Circuit interpreted Tennessee law and held that an insured could not bring a direct action against the agent because she did not sign a blank application and was not assured by her agent that she

---

[7] We note that NHIC stated in its denial letter and in its complaint that its basis for denial of coverage was the written application <u>and</u> the statements made at the EUO.  NHIC does not allege that the statements made by Diller in the EUO were the sole basis or an independent basis for denying him coverage. Rather, NHIC refers to alleged misstatements made in both the application and at the EUO.

[8] Generally, under New Jersey law an insured is assumed to be knowledgeable about his policy.  <u>See</u> <u>Heake v. Atlantic Cas. Ins. Co.</u>, 102 A.2d 385, 392 (N.J.Super.A.D. 1954) (stating that "[t]here is no doubt that...it is the law of New Jersey that an insured is charged with knowledge of the contents of his policy and will be dealt with as though he had read it."); <u>but</u> <u>see</u> <u>Aden v. Fortsh</u>, 776 A.2d 792, 802 (N.J. 2001) (insured's failure to read policy could not be asserted as comparative negligence in suit against broker for negligent failure to procure coverage).

could submit incorrect answers. Id. at *5.[9]

Neither Hartford nor Metropolitan support Kopp/NIA's motion for summary judgment on the theory that Diller is solely responsible for the contents of the application. In those cases, it was part of the record that the statements made by the insured were false and that the court found that the insured knew the statements were false, or at least should have read the insurance application to determine that they were false. Hartford, 955 F.Supp. at 336 (finding that Nittolo failed to provide accurate medical information during the application process and that Garber played no role in Nittolo's supplying of incorrect information to the paramedical examiner); Metroplitan, 2005 WL 1993446, at *1 (affirming that Bell admittedly signed an application with false answers and nothing suggested that Metropolitan or its agent told Bell that those false answers were irrelevant).

Here, as we noted before, Diller alleges that Kopp filled in the information on the website and on the written application for Diller. When Diller inquired about why certain information was missing, Kopp told him it was not necessary to include it and

---

[9] Kopp/NIA make the general statement that Metropolitan is similar to New Jersey law because "... in both states, an insured is responsible for the contents of their insurance applications." Even if Tennessee law and New Jersey law were sufficiently similar on this issue, Metropolitan is distinguishable from this case.

Diller relied upon Kopp's expertise.  Thus, unlike <u>Hartford</u> and <u>Metropolitan</u>, here, there is a genuine issue of material fact as to whether Diller knew the information on the application was false precluding summary judgment at this time.[10]

### D.  Judgment on the Pleadings

Kopp/NIA also filed a motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings.  A motion for judgment on the pleadings may be filed after the pleadings are closed but early enough not to delay trial. <u>See</u> Fed.R.Civ.P. 12(c).  The legal standard applied for a Rule 12(c) motion is the same as that for Rule 12(b)(6) motion. <u>See</u> <u>Leamer v. Fauver</u>, 288 F.3d 532, 535 (3d Cir. 2002) (stating that in ruling on a 12(c) motion, the facts alleged in the pleadings and the inferences to be drawn from those facts are viewed in the light most favorable to the plaintiff, and judgment is not granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law) (citing <u>Jablonski v. Pan American World Airways, Inc.</u>, 863 F.2d 289, 290-91 (3d Cir. 1988)).

### E.  Breach of Fiduciary Duty

As we noted earlier, since Diller does not oppose the

---

[10]  This conclusion is based on the briefing concerning the third-party action only and assume that the record may be expanded upon in the future by motions, if any, filed in the underlying action.

14

dismissal of his claim for breach of the covenant of good faith and fair dealing, or the dismissal of his demand for punitive damages, that claim and demand are dismissed and we only address Diller's claim for breach of fiduciary duty.

Kopp/NIA argue that since there was no allegation of an "imbalance of power" between Kopp/NIA and Diller, and since Diller has not plead a "violation of trust and confidence" that Diller's claim for breach of fiduciary duty should be dismissed. Diller argues that under New Jersey law, a fiduciary relationship exists between an insurance broker and his client and that Diller relied upon Kopp/NIA's expertise.

In Aden v. Fortsh, 776 A.2d 792, 800 (N.J. 2001), the New Jersey Supreme Court stated, "[i]nsurance intermediaries in this State must act in a fiduciary capacity to the client "'[b]ecause of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies.'" (citing Walker v. Atl. Chrysler Plymouth, Inc., 523 A.2d 665 (N.J.Super.A.D. 1987), quoting Sobotor v. Prudential Prop. & Cas. Ins. Co., 491 A.2d 737 (N.J.Super.A.D. 1984)) (other citations omitted).  The court found that a "fiduciary relationship gives rise to a duty owed by the broker to the client 'to exercise good faith and reasonable skill in advising insureds.'" Id. (quoting Weinisch v. Sawyer, 587 A.2d 615 (N.J. 1991)); see also Warren County Vocational Technical School v.

15

Brown, No. L-423-04, 2007 WL 1498972, at *4 (N.J.Super.A.D. May 24, 2007) (finding insurance broker responsible for damages for breach of contract or in tort for negligence or breach of fiduciary duty for failing to exercise reasonable skill, care and diligence).

Diller has alleged sufficient facts that could show that a fiduciary relationship existed between him and Kopp/NIA.  Kopp was his insurance agent for approximately ten years and entered in the information on the MGA website to obtain the quote.  He also filled in the information on the MGA application and sent it to Diller for his review and signature.  Diller asked Kopp about including a prior incident involving the vessel and relied on Kopp's expertise in omitting the information.  While we recognize that this count could have been pled with more precision, it meets the minimum standards of notice pleading.  Because Diller has alleged facts that could show he relied upon Kopp to exercise good faith and reasonable skill in advising him as his insurance agent, Kopp/NIA's motion for judgment on the pleadings is denied.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, Kopp/NIA's motion for summary judgment or, alternatively, for partial summary judgment on the pleadings seeking to dismiss Diller's third-party claims is denied.  Diller's third-party claim for breach of the covenant of good faith and fair dealing, and request for punitive damages are

16

voluntarily dismissed against Kopp/NIA.  An Order consistent with this Opinion will be entered.

                                  S/Noel L. Hillman
                                  NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey